Robert B. Carey (SBN 011186)
John M. DeStefano (SBN 025440)
E. Tory Beardsley (SBN 031926)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
11 West Jefferson Street, Suite 1000
Phoenix, Arizona 85003
Telephone: (602) 840-5900
Facsimile: (602) 840-3012
Email:      rob@hbsslaw.com
               johnd@hbsslaw.com
               toryb@hbsslaw.com

*Attorneys for Plaintiff*

*[Additional counsel on signature page]*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Brynley Wilhelm, on behalf of herself and all others similarly situated,<br><br>                    Plaintiff,<br><br>v.<br><br>Economy Premier Insurance Company, an Illinois corporation,<br><br>                    Defendant. | Case No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

TABLE OF CONTENTS

Page

I.      INTRODUCTION ...................................................................................... 1

II.     PARTIES .................................................................................................... 3

III.    JURISDICTION AND VENUE ................................................................. 3

IV.     GENERAL ALLEGATIONS AS TO ARIZONA LAW .......................... 4

V.      ECONOMY IMPROPERLY REFUSES TO DISCLOSE AND STACK
        WILHELM'S COVERAGE ....................................................................... 6

VI.     CLASS ACTION ALLEGATIONS .......................................................... 12

FIRST CLAIM FOR RELIEF (DECLARATORY JUDGMENT) .................................. 15

SECOND CLAIM FOR RELIEF (BREACH OF CONTRACT) ..................................... 16

THIRD CLAIM FOR RELIEF (BAD FAITH AS TO THE CLASS) .............................. 16

PRAYER FOR RELIEF ................................................................................................... 17

## I.    INTRODUCTION

1.    Under Arizona law, auto insurers must permit their customers to stack policies or coverages for uninsured and underinsured ("UM/UIM") motor vehicle accident claims unless the insurers comply with two simple requirements. First, they must include plain, express, and unambiguous language disavowing the ability to stack multiple policies or coverages. *Franklin v. CSAA Gen. Ins. Co.*, 532 P.3d 1145, 1148 (Ariz. 2023). Second, they must inform their insureds of the right to select the policy or coverage that applies to the accident. A.R.S. § 20-259.01(H). The insurers can fulfill this notice requirement by either (1) including a "statement" in the policy "inform[ing]" the insured of their "right to select one policy or coverage" as "applicable to any one accident," or (2) sending the insured, within thirty days of being notified of the accident, written notice of her "right to select one policy or coverage." *Id*. Defendant never satisfied either requirement for any insured during the class period.

2.    "Stacking" refers to "when an insured obtains coverages for several vehicles and then attempts to claim multiple [UM or] UIM coverages for the same accident." *Am. Family Mut. Ins. Co. v. Sharp*, 277 P.3d 192, 196 ¶ 15 (Ariz. 2012).[1] Because UM/UIM coverage is a personal coverage—despite being associated with a vehicle—it covers the person, not the vehicle. When there are multiple vehicles, multiple UM/UIM coverages exist, and unless the insurer disclaims stacking, those coverage limits are added together to provide "stacked" benefits for a single claim. Each separate coverage limit can be accessed to provide benefits for the same covered loss. When stacking coverages, the coverage limit

---

[1] *See also Rashid v. State Farm Mut. Auto. Ins. Co*., 162, Ariz. 270, 272 n.2, 787 P.2d 1066, 1068 n.2 (1990) (defining "stacking" as "combin[ing] the coverages of a single policy or multiple policies issued by a single insurer"); *State Farm Mut. Auto. Ins. Co. v. Arrington*, 192 Ariz. 255, 258-60, 963 P.2d 334, 337-39 (App. 1998) (stacking occurs when "all available policies are added together to create a larger pool from which the injured party may draw in order to compensate him for his actual loss where a single policy is not sufficient to make him whole;" the insureds' "benefit of the bargain is the cumulative UIM limit . . . Thus, when their damages are higher than the limits of one policy, the other policies can be tapped to make up the difference") (internal quotations omitted).

is determined by adding together the UM/UIM benefits limits available under each vehicle's UM/UIM coverage.

3.      The requirement for insurers to inform the insured of their right to select one policy or coverage, whether stated in the policy or through post-loss correspondence, empowers policyholders to make informed choices regarding their coverage. This ensures that policyholders are fully aware of their options and rights, particularly in complex situations involving multiple policies and coverages, thereby enhancing transparency and confidence in the insurance process.

4.      Beyond the obligations of A.R.S. § 20-259.01(H), when an insured is injured, insurance companies must work to find all available coverage for the insured, reasonably investigate the claim and applicable law, identify and disclose coverages and limits, inform the insured accurately about available coverages and benefits, construe the policy in accordance with known law, treat its insured fairly and reasonably, give the insured's interests equal consideration, and not conceal or misrepresent  pertinent policy provisions, benefits or coverages.[2]

5.      In handling UM/UIM claims for its customers with multiple covered vehicles, Defendant breached each of these duties as well as the insurance contracts themselves.

_____

[2] *See, e.g.*, Arizona Administrative Code § 20-6-801(D)(1) ("No insurer shall fail to fully disclose to first party claimants all pertinent benefits, coverages or other provisions of an insurance policy or insurance contract under which a claim is presented."); *Nardelli v. Metro. Grp. Prop. and Cas. Ins. Co.*, 230 Ariz. 592, 603, 277 P.3d 789, 800 (App. 2012); *Sarchett v. Blue Shield of Cal.*, 233 Cal. Rptr. 76, 84-86, 729 P.2d 267, 275-77 (1987) ("important facet" of duty of equal consideration is "the duty reasonably to inform an insured of the insured's rights and obligations under the insurance policy"); *State Farm Mut. Auto. Ins. Co. v. Shuman*, 175 Ind. App. 186, 370 N.E.2d 941 (1977) (sustaining punitive damages when insurer attempted to induce estate of insured decedent to settle claim without disclosing or explaining all benefits and estate representative "lacked the education and experience to understand the policy terms on her own").

6.     Plaintiff brings this action on behalf of all insureds who were deprived of their right to stack benefits by Defendant Economy Premier Assurance Company ("Economy").

7.     As a matter of uniform and standard practice and procedure, Defendant Economy applied a single UM/UIM coverage limit to Plaintiff's claim even though Defendant Economy neither included plain, express, and unambiguous language disavowing the customer's ability to stack multiple coverages on the policy nor informed the class members of the right to select which coverage to apply to the accident by including that right in the policy or timely advising class members of that right in writing. Defendant, therefore, was responsible for stacking, and for disclosing and providing UM/UIM coverage up to the stacked limits required by Arizona law and the policies but failed to do so. Defendant Economy breached its contractual and legal duties to Plaintiff and other insureds, including underpaying the benefits due.

## II.     PARTIES

8.     Plaintiff Brynley Wilhelm is a resident and citizen of Arizona. Plaintiff is an insured under an Economy Premier Assurance Company policy purchased by Jonna and Daryl Wilhelm.

9.     Defendant Economy is an insurance company incorporated under the laws of Illinois, with its principal place of business in California, but which does business in the state of Arizona.

## III.     JURISDICTION AND VENUE

10.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) because the amount in controversy (including the value of both the disputed claim for $75,000 in stacked coverage and attorneys' fees incurred to date) exceeds $75,000, exclusive of costs and interest, and Plaintiff and the Defendant are citizens of different states. This Court also has jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the proposed Class consists of 100 or more members; the amount in controversy exceeds $5,000,000, exclusive of costs and interest, and minimal diversity exists. Plaintiff

is a citizen of Arizona, and Economy is a citizen of Illinois and California (where it is incorporated and has its principal place of business, respectively).

11. Venue is proper pursuant to 28 U.S.C. § 1391 in that a substantial part of the events giving rise to claims arising from this Incident described herein occurred within this District and the Economy Policies were issued in this District.

12. Whenever it is alleged in this Complaint that Economy did any act or thing, it is meant that Economy and its agents, officers, servants, employees or representatives did such act or thing and when such act or thing was done, it was done with full authorization or ratification of Economy or was done in the normal and routine course and scope of business, or with the actual, apparent and/or implied authority of Economy and its officers, agents, servants, employees or representatives. Specifically, Economy is liable for the actions of its affiliates, officers, agents, servants, employees, and representatives.

## IV.    GENERAL ALLEGATIONS AS TO ARIZONA LAW

13. Arizona's statute governing uninsured motorist ("UM") and underinsured motorist ("UIM") coverages (collectively "UM/UIM coverages") is A.R.S. § 20-259.01. It requires auto insurers to offer UM and UIM coverage on each insured vehicle and governs the terms of that coverage.

14. Insurance policy provisions that diverge from the explicit terms of A.R.S. § 20-259.01 are void. *See, e.g.*, *Cundiff v. State Farm Mut. Auto. Ins. Co.*, 217 Ariz. 358, 174 P.3d 270 (2008); *Am. Family Mut. Ins. Co. v. Sharp*, 229 Ariz. 487, 277 P.3d 192 (2012). The statute has "a remedial purpose and must be construed liberally in favor of coverage." *Sharp*, 229 Ariz. at 492, 277 P.3d at 197 (quoting *Taylor v. Travelers Indem. Co. of Am.*, 198 Ariz. 310, 9 P.3d 1049 (2000)).

15. Subsection (H) of A.R.S. § 20-259.01, as amended in 1997, allows insurers to draft their policies to prohibit stacking of UM/UIM coverages but prescribes a strict method for doing so. Insurers wishing to prohibit stacking must include plain, express, and unambiguous language in the policy to that effect. *Franklin v. CSAA Gen. Ins. Co.*, 532 P.3d 1145, 1148 (Ariz. 2023). Further, insurers wishing to prohibit stacking must either

draft the policy to "contain a statement that informs the insured of the insured's right to select one policy or coverage as required by this subsection," or, absent such policy language, "within thirty days after the insurer receives notice of an accident, . . . notify the insured in writing of the insured's right to select one policy or coverage." A.R.S. § 20-259.01(H).

16.    "Subsection (H) is not self-executing; insurers must include policy language incorporating its limitations." *Hanfelder v. GEICO Indem. Co.*, 244 Ariz. 475, 422 P.3d 579 (App. 2018); *see also State Farm Mut. Auto. Ins. Co. v. Lindsey*, 182 Ariz. 329, 897 P.2d 631 (1995).

17.    The phrase "multiple policies or coverages" in Subsection (H) applies only "when an insured obtains coverages for several vehicles and then attempts to claim multiple [UM or] UIM coverages for the same accident." *Sharp*, 229 Ariz. at 491, 277 P.3d at 196.

18.    "Subsection (H) is not exclusively limited to circumstances where multiple policies exist; it applies to multiple policies or coverages, and therefore to the stacking of UM/UIM coverages under a single multi-vehicle insurance policy. *Franklin*, 532 P.3d at 1153.

19.    Under Subsection (H), the failure to include plain, express and unambiguous policy language that prohibits stacking prevents an insurer from limiting stacking. *Id.* Independently, the "[f]ailure to notify an insured of his right to select which policy should apply in an anti-stacking provision in writing, either in the policy itself or within 30 days of any claim, prevents an insurer from limiting [stacking] coverage under Arizona law." *Schwallie v. Am. Family Mut. Ins. Co.*, No. CV-12-00681, 2013 WL 4478697 (D. Ariz. Aug. 20, 2013); *see also Franklin*, 532 P.3d at 1146 ("[I]nsurers seeking to prevent insureds from stacking UIM coverages under a single, multi-vehicle policy must employ Subsection (HH's sole prescribed method for limiting stacking.").

20.    Implied in every insurance contract in Arizona is a covenant of good faith and fair dealing owed to Plaintiff. Under the contractual covenant of good faith and fair dealing, an insurer must deal fairly with an insured, giving in all matters equal

consideration to the insured's interests. *See, e.g.*, *Rawlings v. Apodaca*, 151 Ariz. 149, 156-57, 726 P.2d 565, 572-73 (1986).

21.     The contractual covenant of good faith and fair dealing also includes an obligation to inform the insureds about the extent of coverage and their rights under the policy and to do so in a way that is not misleading.[3]

## V.    ECONOMY IMPROPERLY REFUSES TO DISCLOSE AND STACK WILHELM'S COVERAGE

22.     On August 13, 2021, Brynley Wilhelm was operating a car when she was struck by a vehicle driven by Alexyss Tucker.

23.     Ms. Tucker was negligent in causing the accident, and she was the sole cause of the collision.

24.     On September 9, 2021, Economy received written notice that Plaintiff was injured in the August 13, 2021 collision.

25.     The same day, Plaintiff opened a claim with Economy, which was assigned a claim number of AM012186.

26.     As a result of the collision, Plaintiff suffered severe injuries, with partial medical special damages from Plaintiff's initial hospitalization alone exceeding $435,000. Economy knew Ms. Wilhelm was admitted into Chandler Regional Medical Center for evaluation and treatment of her injuries. She suffered a pelvic ring fracture, left acetabulum fracture, left femur fracture (all requiring surgery), multiple other fractures (lumbar and coccyx) and acute blood loss requiring multiple transfusions.

---

[3] *See, e.g.*, Arizona Administrative Code § 20-6-801(D)(1) ("No insurer shall fail to fully disclose to first party claimants all pertinent benefits, coverages or other provisions of an insurance policy or insurance contract under which a claim is presented."); *Nardelli v. Metro. Grp. Prop. and Cas. Ins. Co.*, 230 Ariz. 592, 603, 277 P.3d 789, 800 (App. 2012); *Sarchett v. Blue Shield of Cal.*, 233 Cal. Rptr. 76, 84-86, 729 P.2d 267, 275-77 (1987) ("important facet" of duty of equal consideration is "the duty reasonably to inform an insured of the insured's rights and obligations under the insurance policy"); *State Farm Mut. Auto. Ins. Co. v. Shuman*, 175 Ind. App. 186, 370 N.E.2d 941 (1977) (sustaining punitive damages when insurer attempted to induce estate of insured decedent to settle claim without disclosing or explaining all benefits and estate representative "lacked the education and experience to understand the policy terms on her own").

27.    Given the severity of her injuries, Ms. Tucker—having only $100,000 in available bodily injury liability coverage—was underinsured as to Plaintiff Wilhelm. *See* A.R.S. § 20-259.01(G).

28.    To protect their guests and family members from uninsured or underinsured tortfeasors, Plaintiff's parents, Jonna and Daryl Wilhelm, purchased UM/UIM insurance through Economy. At the time of loss, Plaintiff was insured under an Economy auto insurance policy that insured five cars: a 2007 Toyota Tundra, a 2018 Nissan Versa, a 2019 Nissan Versa, a 2014 Chevrolet Traverse, and a 2007 BMW X3. This policy number was A7999237150.

29.    Each vehicle's coverage provided Plaintiff with UIM benefits of $100,000 per person and $300,000 per occurrence.

30.    Plaintiff Wilhelm's damages attributable to Ms. Tucker's fault exceeded the available amount of Ms. Tucker's bodily injury liability coverage and the UIM coverages on the five vehicles insured under the Economy policy.

31.    In the "Arizona Underinsured Motorists Coverage" endorsement to Plaintiff's policy, Economy agreed to pay as follows:

> **We** will pay compensatory damages which an **insured** is legally entitled to recover from the owner or operator of an **underinsured motor vehicle** for **BI**: 1. sustained by an **insured**; and 2. caused by an accident arising out owning, maintaining, or the use of an **underinsured motor vehicle**.

32.    In the "Arizona Uninsured Motorists Coverage" endorsement to Plaintiff's policy, Economy agreed to pay as follows:

> **We** will pay compensatory damages which an **insured** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** because for **BI**: 1. sustained by an **insured**; and 2. caused by an accident arising out of owning, maintaining, or the use of an **uninsured motor vehicle**.

33.    On September 16, 2022, Plaintiff advised Economy of her intent to pursue an underinsured motorist claim. At that time, she provided Economy with the details of her injuries as well as her medical records and medical bills supporting the claimed injuries.

Based on the information contained in the written notice to Economy, Plaintiff demanded "THE IMMEDIATE TENDER OF ALL APPLICBALE UNDERINSURED MOTORIST POLICY LIMITS."

34.    In response, Economy informed Plaintiff that the applicable policy limit for the UIM claim was $100,000.

35.    Economy did not notify Plaintiff or any other class member of the availability of stacked UM and/or UIM coverage.

36.    Economy did not notify Plaintiff or any other class member that if the required notice was not sent within thirty days of Economy receiving notice of the collision, Economy would, under Arizona law, owe to its insureds stacking of their various UM/UIM coverages unless the policy language itself satisfied the obligation owing under A.R.S. § 20-259.01(H), which is not the case here or for any other class member.

37.    The Economy Policy under which Plaintiff was insured is Economy's standard form Policy for personal (i.e., non-commercial) auto policies.

38.    The Economy Policy does not contain plain, express, and unambiguous language that prohibits stacking multiple UM/UIM coverages.

39.    The Economy Policy fails to include a statement informing the insureds of their "right to select one policy or coverage" as applicable to any one accident. As used herein, the "Economy Policy" or the "Economy Policies" means any personal auto policy issued to an Arizona insured by Economy. Every one of these policies fail to include a statement informing the insureds of their right to select one UM/UIM coverage, as between multiple vehicles insured under their policies, in the event of a covered loss.

40.    It merely states that the limit of liability for Uninsured and Underinsured Motorist Coverage is "shown in the Declarations for each person for Underinsured Motorists Coverage," no matter how many vehicles are listed:

> **Limit of Liability**
>
> The limit of liability shown in the Declarations for "each person" is the most **we** will pay for all damages, including

prejudgment and post-judgment interest, due to **BI** to any one person as the result of any one accident.  This includes all damages sustained by any other person as a result of the **BI**. Subject to this limit for "each person", the limit shown in the Declarations for "each accident" is the most we will pay for all damages, including prejudgment and post-judgment interest, arising out of **BI** sustained by any two or more persons resulting from any one accident.

If a single limit is shown in the Declarations for "each accident" this is the most **we** will pay for any one accident, including prejudgment and post-judgment interest.

The limit of liability includes damages for care, loss of consortium, emotional distress, and loss of services or death. This is the most **we** will pay regardless of the number of:
A.      **Insureds;**
B.      claims made;
C.      **covered autos** shown in the Declarations;
D.      premiums shown in the Declarations; or
E.      vehicles involved in the accident.

41.      The declarations page of the Economy policy also does not inform the insured of their "right to select one policy or coverage."

42.      Economy also did not, within 30 days of receiving notice of the August 13, 2021 collision at issue here, send Plaintiff or any other insured under the Policy any written notice of Plaintiff's "right to select one policy or coverage."

43.      As a general practice, whenever Economy fails to comply with its statutory obligation to advise its insureds in writing within 30 days after receiving notice of an accident that they have a right to select one policy or coverage, Economy does not provide stacked benefits unless specifically requested by the insured to do so.

44.      Having failed to comply with Arizona law, Economy must stack the UM/UIM coverages for multiple vehicles insured under the Economy Policies.

45.      Economy never disclosed or provided stacked UIM coverages to Plaintiff. Economy, therefore, has denied Plaintiff benefits to which she is entitled under the Economy Policy and Arizona law.

46.     As a general practice, Economy does not disclose or provide stacked UM/UIM coverages to Plaintiff or class members under the Economy Policies after a covered accident. Economy has provided stacked limits to insureds who specifically requested it do so, in effect silencing the squeaky wheels while continuing to underpay Plaintiff and virtually all class members in violation of its contractual and legal duties as a first-party insurer.

47.     Economy knew or should have known that its policy interpretation and failures to disclose and pay stacked UM/UIM coverages violated Arizona law.

48.     Economy knew of the requirements of A.R.S. § 20-259.01(H), which have been in place since 1997.

49.     Economy knew or should have known of the efforts by other Arizona auto insurers to comply with A.R.S. § 20-259.01(H).

50.     Economy chose not to follow those practices.

51.     Economy on limited occasions in Arizona has acknowledged, tendered, or paid stacked UM or UIM limits when requested by the insured to do so.

52.     Economy failed to pay Plaintiff and the Class stacked UM/UIM coverages to which they were entitled.

53.     Economy failed, as to Plaintiff and the Class, to investigate, identify, acknowledge, and disclose the existence of stacked UM/UIM coverages under the Economy Policies.

54.     Economy and its agents violated Administrative Code § 20-6-801(D)(1) and (D)(2) by failing to investigate, identify, acknowledge, and disclose stacked UM/UIM coverages under the Economy Policies.

55.     On information and belief, Economy received legal advice that its policy language and failure to give proper notice violated Arizona law, but Economy disregarded the advice it received and willfully failed to investigate and inform itself on Arizona law on stacked UM/UIM coverages, as to Plaintiff and the Class.

56.     On information and belief, Economy received legal advice regarding its obligations to provide stacked UM/UIM coverages and was advised that its failures to pay stacked UM/UIM coverages likely violated Arizona law. Economy disregarded that legal advice.

57.     On information and belief, Economy willfully concealed the existence of stacked UM/UIM coverages from Plaintiff and the Class.

58.     Economy has nonetheless failed to search and reopen its closed claim files to identify, adjust and pay stacked UM or UIM benefits it owes under Arizona law. Any insured who received the maximum amount of a single UM/UIM policy limit and who had other vehicles or policies providing UM/UIM coverage would be entitled to notice of the additional coverage available and doubtless entitled to receive additional benefits.

59.     Instead, when paying UM or UIM benefits, Economy has a practice of attempting to evade and discourage any subsequent requests for stacked limits by requesting the insured sign a release of all claims in exchange for the payment. Economy does so despite knowing the insured is entitled to the payment without signing a release, and that it will issue payment of that benefit even if the insured declines to execute the release.

60.     Economy's failures are both unreasonable, intentional, and in conflict with well-established Arizona law.

61.     Economy's failures also violate its duty to find coverage, to reasonably investigate the claim, disclose the proper law and facts, and not misrepresent or conceal pertinent policy provisions and benefits available under its policies.

62.     Economy's concealment of its statutory obligation and its actual coverage limits, and its unreasonable and unlawful refusal to investigate, identify, acknowledge, disclose and pay stacked UM/UIM coverages, have led to underpaying Plaintiff's UIM claim, as well as the claims of hundreds or thousands of other UM/UIM claims, and thus resulting in Economy paying tens or hundreds of millions of dollars less for UM and UIM

claims than its insureds are entitled to under the terms of their standardized policies and Arizona law.

### VI.    CLASS ACTION ALLEGATIONS

63.    This action is brought and may properly be maintained as a class action, as it satisfies the numerosity, commonality, typicality, and adequacy requirements of Federal Rule of Civil Procedure 23. Plaintiff brings all claims herein individually and as a class action (for the class defined below), pursuant to Rule 23.

64.    The class consists of the following:

> From the earliest time allowable by law to the date of entry of judgment, all persons who (1) were insured under one or more policies individually or collectively insuring multiple vehicles issued in Arizona by any Defendant, and (2) who experienced a covered loss where the insured person received UM/UIM benefits and either:

>> (1) the UM/UIM benefits were limited to the limits of coverage of a single vehicle, or

>> (2) the UM/UIM benefits were reduced due to apportionment among multiple claimants, with the collective claim limited to the limits of coverage of a single vehicle.

65.    While the exact number of members cannot be determined, the class consists of at least hundreds of Arizona residents. The members of the class are therefore so numerous that joinder of all members is impracticable. The exact number of class members can readily be determined by documents produced by Economy.

66.    There are questions of fact and law common to the class, including the following:

i.    Whether the Economy Policy plainly, expressly, and unambiguously prohibits stacking;

ii.    Whether the Economy Policy complies with Subsection (H) of A.R.S. § 20-259.01, allowing Economy to preclude stacking;

iii.    Whether Economy failed to send timely notice to its insureds after a loss of their right to select one UM/UIM policy or coverage;

iv.    Whether Economy concealed or failed to investigate, identify, acknowledge and disclose the existence of stacked UM/UIM coverages under the Economy Policies;

v.    Whether Economy failed to stack UM/UIM policies or coverages;

vi.    Whether, through the foregoing practice, Economy breached its contracts with its insureds;

vii.    Whether, through the foregoing practice, Economy breached the implied covenant of good faith and fair dealing and violated statutes governing unfair claims settlement practices including A.R.S. § 20-461, and Arizona Administrative Code § 20-6-801(D)(1) and (D)(2);

viii.    Whether, through the foregoing practice, Economy caused and will continue to cause harm to its insureds;

ix.    Whether Economy is obligated to search or reopen its closed claim files to identify, adjust and pay stacked UM or UIM benefits it owes under Arizona law;

x.    Whether Plaintiff and the Class are entitled to declaratory relief;

xi.    Whether Economy has an unlawful practice of attempting to evade and discourage any subsequent requests for stacked limits by requesting the insured sign a release of all claims in exchange for the payment;

xii.    Whether Economy's above-referenced conduct as to the Class warrants an award of compensatory damages;

xiii.    Whether Economy's above-referenced conduct as to the Class warrants an award of punitive damages; and

xiv.    Whether Plaintiff and the class are entitled to an award of attorney's fees.

67.    Plaintiff has the same interests in this matter as all other members of the Class, and her claims are typical of those of all members of the class. Plaintiff's claims are coincident with and not antagonistic to those of other class members she seeks to represent. Plaintiff and all Class members have been harmed by Economy's common course of conduct as outlined herein. The harm to each Class member was caused by Economy's wrongful conduct.

68.    Plaintiff is committed to pursuing this action and has retained competent class counsel experienced in insurance litigation and class action litigation. Plaintiff will fairly and adequately represent the interests of the Class members.

69.    Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(1)(A) because separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the party opposing the Class.

70.    Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(2) because Economy's actions are generally applicable to the Class as a whole, and Plaintiff seeks, inter alia, equitable remedies with respect to the Class as a whole.

71.    Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because the questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

72.    Class certification is appropriate under Federal Rule of Civil Procedure 23(c)(4) because resolution of a key fact issue common to the Class—did Economy's conduct constitute bad faith under Arizona law—will materially advance the litigation.

73.    Absent a class action, most of the members of the Class will remain ignorant of their rights and/or find the cost of litigating their claims prohibitive. Therefore, they will have no effective remedy. The class treatment of common questions of law and fact conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication. Economy has concealed, failed to disclose or misled class

members about their rights and those class members will remain ignorant of their potential claims against Economy unless court-supervised notice is ordered.

74.    Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions involving the insurance industry. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of other respective Class members and have the financial resources to do so. Neither Plaintiff nor her counsel have any interests adverse to those of other members of the Class.

**FIRST CLAIM FOR RELIEF**
**(DECLARATORY JUDGMENT)**

75.    Plaintiff incorporates by reference all prior allegations in this Complaint as if fully set forth herein.

76.    Plaintiff and the Class have standing to seek this relief because there is an actual controversy between the parties as to the proper interpretation and enforceability of the Economy Policies under Arizona law, the application of A.R.S. § 20-259.01(H) to this case, Economy's obligation to disclose the existence of stacked UM/UIM coverages, and whether Plaintiff and the Class are entitled to stack UM/UIM coverages for multiple insured vehicles.

77.    Under the circumstances, Plaintiff and the Class are entitled to a judicial declaration of their rights under the Economy Policies, specifically that they are entitled to stack UM/UIM coverages for multiple insured vehicles under the Economy Policies, that Economy was required to disclose the existence of stacked coverages to them, and that Economy was required to search and reopen its closed claim files to identify, adjust and pay stacked UM or UIM benefits once it knew its Economy Policies and its practices did not allow it to preclude stacking under Arizona law.

**SECOND CLAIM FOR RELIEF**
**(BREACH OF CONTRACT)**

78.    Plaintiff incorporates by reference all prior allegations in this Complaint as if fully set forth herein.

79.    Each Class member (including Plaintiff) is a party to one or more of the standardized Economy Policies.

80.    Economy further breached those contracts by concealing or failing to identify, acknowledge, disclose, and pay the stacked UM/UIM limits of the Economy Policies under Arizona law, despite Economy's failure to comply with A.R.S. § 20-259.01(H), and by denying the existence of any such stacked limits.

81.    The Class (including Plaintiff) has been and continues to be damaged by Economy's breaches of contract.

**THIRD CLAIM FOR RELIEF**
**(BAD FAITH AS TO THE CLASS)**

82.    Plaintiff incorporates by reference all prior allegations in this Complaint as if fully set forth herein.

83.    Inherent and implied in the Economy Policy is a covenant of good faith and fair dealing owed to Plaintiff. Under the duty of good faith and fair dealing, an insurer must deal fairly with an insured, giving equal consideration in all matters to the insured's interests. *See, e.g., Rawlings v. Apodaca*, 151 Ariz. 149, 156-57, 726 P.2d 565, 572-73 (1986).

84.    The tort of bad faith arises when an insurer "intentionally denies, fails to process or pay a claim without a reasonable basis." *Noble v. Nat'l Am. Life Ins. Co.*, 128 Ariz. 188, 190, 624 P.2d 866, 868 (Ariz. 1981); *Wood v. Liberty Mut. Fire Ins. Co.*, No. CV-11-2380-PHX-GMS, 2012 WL 2798761, at *2 (D. Ariz., July 09, 2012). "The appropriate inquiry is whether there is sufficient evidence from which reasonable jurors could conclude that in the investigation, evaluation, and processing of the claim, the insurer acted unreasonably and either knew or was conscious of the fact that its conduct was

unreasonable." *Zilisch v. State Farm Mut. Auto. Ins. Co.*, 995 P.2d 276, 280 (Ariz. 2000). Bad faith can be established by showing "(1) the absence of a reasonable basis for denying benefits, and (2) the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." *Wood*, 2012 WL 2798761, at *2. In addition, under Arizona law, bad faith can be established by showing that the insurer lacked a "founded belief" for its actions because of an inadequate investigation. *Rawlings*, 151 Ariz. At 160, 726 P.2d at 576.

85.  The duty of good faith and fair dealing also includes, among other things, an obligation to inform the insureds about the extent of coverage and their rights under the policy and to do so in a way that is not misleading.

86.  Economy acted objectively and subjectively unreasonably as to the Class by concealing, or failing to identify, acknowledge, disclose, and pay benefits up to the stacked UM/UIM limits of the Economy Policies, despite Economy's failure to comply with A.R.S. § 20-259.01(H).

87.  Economy did so, even though it knew or should have known the Economy Policies failed to comply with A.R.S. § 20-259.01(H). The Class seeks as damages the value of the unpaid UM/UIM stacking benefits under Arizona law.

88.  Economy, therefore, acted in bad faith toward Plaintiff and the Class.

89.  Economy's conduct as to the Class was aggravated, outrageous and consciously disregarded an unjustifiably substantial risk of significant harm to its insureds who are Class members.

90.  Economy is, therefore, liable to the Class for punitive damages, which can be proven with common evidence.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against Economy as follows:

A.  An order appointing Plaintiff as class representative and Robert Carey as class counsel and certifying the First and Second Claims for Relief under Rule 23(b)(2), and/or (b)(3), and the Third Claim for Relief as to liability and associated punitive damages

under (c)(4).

B.    A declaratory judgment that Plaintiff and the Class are entitled to stacked UM/UIM coverages under the Economy Policies, and a declaration establishing or an order mandating that the Class is entitled to disclosure of the existence of stacked coverages.

C.    Compensatory damages for the Class in an amount to be proven at trial.

D.    Punitive damages in an amount to be proven at trial.

E.    An award of Plaintiff's attorney's fees pursuant to any applicable authority including but not limited to A.R.S § 12-341.01.

F.    Statutory interest pursuant to A.R.S. § 20-462(A).

G.    For costs and expenses incurred herein to the maximum extent permitted by law.

H.    Pre-judgment and post-judgment interest to the maximum extent permitted by law.

I.    Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a jury trial pursuant to Federal Rule of Civil Procedure 38 for all actions so triable.

Dated: May 28, 2024

Respectfully submitted by,

HAGENS BERMAN SOBOL SHAPIRO LLP

By: *s/ Robert. B. Carey*
    Robert B. Carey
    John M. DeStefano
    E. Tory Beardsley
    11 West Jefferson Street, Suite 1000
    Phoenix, Arizona 85003
    Telephone: (602) 840-5900
    Facsimile: (602) 840-3012
    Email:    rob@hbsslaw.com
              johnd@hbsslaw.com
              toryb@hbsslaw.com

THE SLAVICEK LAW FIRM
    Brett L. Slavicek (SBN 019306)
    James Fucetola (SBN 029332)
    Justin Henry (SBN 027711)
    5500 North 24th Street
    Phoenix, Arizona 85016
    Telephone:  (602) 285-4435
    Facsimile:  (602) 287-9184
    Email:    brett@slaviceklaw.com
              james@slaviceklaw.com
              justin@slaviceklaw.com

*Attorneys for Plaintiff*